UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINCARE INC.,

    Plaintiff,

v.                                                            Case No.:

SRETEN MARKOVIC, a/k/a SAM
MARKOVIC,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Lincare Inc. ("Lincare"), sues Defendant, Sreten Markovic a/k/a Sam Markovic ("Markovic"), and alleges as follows:

### Parties, Jurisdiction, and Venue

1. This is a claim for damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2. Lincare is a Delaware corporation with its principal place of business in Clearwater, Florida. Thus, for purposes of diversity jurisdiction, Lincare is a citizen of Delaware and Florida.

3. Markovic is an individual who resides in and whose domicile is Roseburg, Oregon. Thus, for purposes of diversity jurisdiction, Markovic is a citizen of Oregon.

4. This Court has specific personal jurisdiction over Markovic pursuant to section 48.193(1)(a), Florida Statutes because, as described below, Markovic

committed tortious acts within this state. Further, Markovic entered into an employment agreement with Lincare dated February 1, 2019 (the "Employment Agreement"), pursuant to which he consented to jurisdiction in this state for claims, demands, lawsuits, proceedings and controversies arising from or related to the Employment Agreement. A copy of the Employment Agreement is attached as Exhibit A.

5. In addition, as part of his job with Lincare, Markovic traveled to Lincare's headquarters in Florida to attend meetings. He also received his bi-weekly payments processed from Lincare's headquarters in Florida. Further, Markovic submitted his expense reimbursement reports to Lincare for processing and payment at its headquarters in Florida.

6. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

7. Venue is proper in this District because a substantial part of the events giving rise to the claim occurred in this District.

## General Allegations

8. Lincare is a leading provider of in-home respiratory care offering services throughout the contiguous United States.

9. Lincare initially hired Markovic to be the Center Manager for its Roseburg, Oregon center.

10. During his tenure with Lincare, Markovic was promoted to various management roles, the most recent of which was Regional Vice President for the United States West Coast operations, which employs some 877 Lincare employees.

11. Prior to 2020, as a general practice and policy, Lincare personnel used company-issued credit cards for business expenses.

12. At the beginning of 2020, Lincare modified its reimbursement policy and permitted employees like Markovic to use a personal credit card for business expenses. The employee would then seek reimbursement for those expenses from Lincare.

13. To obtain a reimbursement for a business expense, a Lincare employee must submit, or cause to be submitted, an expense report through Lincare's online system, "Concur."

14. In addition, the employee must use Concur to provide a copy of an invoice, receipt, or other documents reflecting the expense incurred.

15. The expense reports and supporting documentation are delivered to and received by Lincare's Accounts Payable Department in Clearwater, Florida and once approved, the employee is reimbursed.

16. Markovic was a senior-level employee with a significant responsibility in the company. He understood the expectations associated with and the parameters of Lincare's reimbursement policy.

**Lincare Discovers Abnormalities in Markovic's Expenses**

17. In early April 2022, Lincare engaged in a review of the company's expenses.

18. During this review, Lincare identified irregularities with Markovic's expenses and reimbursements.

19. In particular, the expenses purportedly incurred by Markovic were substantially higher when compared to others in similar positions.

20. A more thorough analysis of Markovic's purported expenses dating back to July 2021 confirmed the abnormalities.

21. These spending anomalies prompted Lincare to conduct a more detailed internal investigation of Markovic's expense reports and reimbursements.

## Fabricated Invoices

22. During its investigation into Markovic's expenses, Lincare identified a number of reimbursement requests from Markovic for payments he allegedly made to Indeed.com ("Indeed"), an online job posting platform.

23. The payments were allegedly for "Sponsored Jobs on Indeed.com" and dated back to 2018.

24. Lincare investigated the issue further, examining purported Indeed invoices that Markovic submitted to Lincare for reimbursement.

25. Lincare's review of the purported invoices revealed several irregularities and sparked further suspicion of misconduct.

26. For example, these purported Indeed invoices were not directed to Lincare; rather, they were directed to "Respiratory Company" and identified Markovic's home address as the place of business.

27. Further, the purported Indeed invoices had inconsistencies in the spacing, font, and formatting when compared to authentic Indeed invoices. They also featured an altered Indeed logo as compared to the authentic invoices.

28. To confirm this was not some innocent mistake, Lincare contacted Indeed directly to inquire about the authenticity of a sample of purported invoices that Markovic had submitted to Lincare for reimbursement.

29. Through its internal investigation and its discussions with Indeed, Lincare confirmed that Markovic submitted, requested, and received reimbursement based on numerous fabricated Indeed invoices.

30. In some instances, Markovic created fake Indeed invoices for services that were never provided and for amounts that were never charged.

31. In other instances, Markovic created fake Indeed invoices based on services that were provided, but he increased the amount of the charge and then pocketed the difference when it was reimbursed.

32. There were even instances prior to 2020—when Lincare employees normally used a company-issued credit card for business expenses—that Markovic submitted requests and received reimbursements for Indeed invoices that had already been paid claiming he incurred the charges as a cash expense.

33. Lincare continues to investigate the breadth of Markovic's malfeasance. However, thus far, Lincare has determined that Markovic submitted at least 230 fraudulent Indeed invoices to Lincare's Accounts Payable department through

Concur, along with falsified expense reports, and that Lincare has paid Markovic at least $94,249.70 based on those fraudulent invoices.

### Duplicate, Falsified, and/or Improper Expenses

34. In addition to fabricating invoices for reimbursement, Markovic also made several duplicate requests and received duplicate reimbursements for a single expense.

35. For example, there are multiple instances in which Markovic submitted a reimbursement request for a car rental on one expense report, and then submitted an additional reimbursement request for that same car rental on a subsequent expense report.

36. These duplicative requests were not by mistake. Markovic would submit different forms of support for the requests in an effort to conceal his misconduct.

37. For instance, when seeking reimbursement for a car rental, Markovic would sometimes submit a rental agreement invoice with one expense report and then submit the receipt for that same rental in a subsequent expense report.

38. As further evidence that this was not a mistake, Markovic routinely made these fraudulent, duplicative requests. Over the past five months alone, Lincare paid Markovic over $5,000 for expense reimbursements that he had already received.

39. Beyond requesting duplicative reimbursements, Markovic also submitted reimbursement requests that were falsified and/or improper and received payment based on those requests.

40. For example, Markovic requested and received reimbursement for an alleged $324 parking charge at a hotel. However, a further review of the request revealed that parking at the hotel was only $24 total, and that the remaining $300 was for mini-bar charges.

41. In another instance, Markovic requested and received reimbursement for a dinner he allegedly had with a coworker. However, this coworker has since confirmed that she never had this dinner with Markovic.

42. Markovic also requested and received reimbursements for expenses he purportedly incurred while he was taking Paid Time Off. For example, in December 2021, he was reimbursed for airport parking during a period when his time records show he was on PTO.

43. It also appears Markovic was using his expense privileges to pay for meals for other individuals that he failed to identify in violation of Lincare's reimbursement policy. There have been occurrences over the past five months in which Markovic requested and received reimbursement for meals that included multiple entrees without any explanation.

44. In addition, it appears Markovic was submitting reimbursement requests for expenses incurred by other individuals. For instance, according to a receipt submitted with an expense report, Markovic purportedly made a purchase, for which he was subsequently reimbursed, while he was in Seattle, Washington. However, Lincare's records reveal that Markovic was actually in San Antonio, Texas during that time.

45. Markovic has also submitted multiple false and inflated mileage reimbursement requests. In February 2022 alone, Markovic received reimbursement for 1,467 miles he allegedly drove using his personal vehicle. However, Markovic rented a vehicle for all but seven of the business days in February. And on each of those seven days that he did not rent a vehicle, Markovic did not have a single other reimbursable business expense.

### Lincare Terminates Markovic and Continues to Investigate

46. Following the initial investigation of Markovic's expenses and the discovery of his unlawful conduct, Lincare terminated him for cause in accordance with the Employment Agreement.

47. Thus far, Lincare has determined that Markovic has stolen over $99,000.00 from Lincare through his fraudulent expense reimbursement practices. However, Lincare continues to investigate the breadth of Markovic's misconduct and suspects that the total amount misappropriated is higher.

48. Regardless of the amount, it is indisputable that Markovic has defrauded, stolen from, and damaged Lincare.

49. All conditions precedent to the bringing and maintenance of this action and the granting of the relief requested have occurred, have been performed, or have been waived.

50. Lincare has retained the firm of Turkel Cuva Barrios, P.A. to represent it in this case and is obligated to pay its counsel a reasonable fee for services rendered.

## COUNT I
## Conversion[1]

51. Lincare realleges and incorporates paragraphs 1 through 50.

52. Markovic knowingly misappropriated Lincare's property, namely its money, through a fraudulent expense reporting and reimbursement scheme.

53. Through this scheme, Markovic intended to deprive, and actually did deprive, Lincare of its right to and the benefit of its money and instead misappropriated that money for his own use.

54. Markovic has failed to return the misappropriated funds.

55. As a result of Markovic's misappropriation of Lincare's funds, Lincare has suffered damages.

WHEREFORE, Plaintiff, Lincare Inc., requests a judgment against Markovic for damages, punitive damages, interest, costs, and such further relief as the Court deems just and proper.

## COUNT II
## Fraud

56. Lincare realleges and incorporates paragraphs 1 through 50.

57. Markovic made false statements of material fact to Lincare when he submitted false and inaccurate expense reports with fabricated invoices for reimbursement.

---

[1] Pursuant to section 772.11, Florida Statutes, Lincare is delivering a civil theft demand letter for treble damages. Lincare reserves its right to amend this complaint to assert a claim for civil theft if Markovic fails to comply with the demand.

58. In particular, from January 2019 through March 2022, Markovic submitted hundreds of fraudulent expense reports and fabricated Indeed invoices to Lincare.

59. Markovic submitted at least 149 fraudulent expense reports supported by fabricated Indeed invoices on the dates set forth on Exhibit B.

60. At the time he submitted the false expense reports and fabricated invoices, Markovic knew that they were false and that he was not entitled to the funds for which he was seeking reimbursement.

61. Markovic intended that Lincare would rely on the false expense reports and fabricated invoices and pay Markovic funds to which he was not entitled.

62. Lincare did, in fact, rely on the false expense reports and fabricated invoices and paid Markovic at least $99,000 to which he was not entitled, thereby causing damage to Lincare as a result.

WHEREFORE, Plaintiff, Lincare Inc., requests a judgment against Markovic for damages, punitive damages, interest, costs, and such further relief as the Court deems just and proper.

## COUNT III
### Negligent Misrepresentation

63. Lincare realleges and incorporates paragraphs 1 through 50.

64. Markovic made a false statement of material fact to Lincare when he submitted false and inaccurate expense reports with fabricated invoices for reimbursement.

65. In particular, from January 2019 through March 2022, Markovic submitted hundreds of fraudulent expense reports and fabricated Indeed invoices to Lincare.

66. Markovic submitted at least 149 fraudulent expense reports supported by fabricated Indeed invoices on the dates set forth on Exhibit B.

67. At the time he submitted the false expense reports and fabricated invoices, Markovic should have known that the expense reports and fabricated invoices were false and that he was not entitled to the funds for which he was seeking reimbursement.

68. Markovic intended that Lincare would rely on the expense reports and fabricated invoices that he submitted and pay Markovic funds to which he was not entitled.

69. Lincare did, in fact, rely on the false expense reports and fabricated invoices and paid Markovic at least $99,000 to which he was not entitled, thereby causing damage to Lincare as a result.

WHEREFORE, Plaintiff, Lincare Inc., requests a judgment against Markovic for damages, punitive damages, interest, costs, and such further relief as the Court deems just and proper.

## COUNT IV
### Breach of Fiduciary duty

70. Lincare realleges and incorporates paragraphs 1 through 50.

71. As a Regional Vice President of Lincare's United States operations for the West Coast, Markovic owed a fiduciary duty to Lincare.

72. Markovic breached his fiduciary duty to Lincare by submitting fraudulent expense reports and fabricated invoices to Lincare for reimbursement, and by accepting and retaining the funds Lincare paid him in connection with these reimbursement requests.

73. The dates on which Markovic submitted false expense reports to Lincare with fabricated Indeed invoices are set forth on Exhibit B.

74. As a direct and proximate result of Markovic's breach, Lincare has suffered damages.

WHEREFORE, Plaintiff, Lincare Inc., requests a judgment against Markovic for damages, punitive damages, interest, costs, and such further relief as the Court deems just and proper.

## COUNT V
### Breach of the Duty of Loyalty

75. Lincare realleges and incorporates paragraphs 1 through 50.

76. Markovic owed Lincare a duty of loyalty that arose out of and related to the Employment Agreement and Markovic's role as a Regional Vice President of Lincare's United States operations for the west coast.

77. Markovic breached his duty of loyalty to Lincare by submitting fraudulent expense reports and fabricated invoices to Lincare for reimbursement, and

by accepting and retaining the funds Lincare paid him in connection with these reimbursement requests.

78. The dates on which Markovic submitted false expense reports to Lincare with fabricated Indeed invoices are set forth on Exhibit B.

79. As a direct and proximate result of Markovic's breach, Lincare has suffered damages.

WHEREFORE, Plaintiff, Lincare Inc., requests a judgment against Markovic for damages, punitive damages, interest, costs, and such further relief as the Court deems just and proper.

## COUNT VI
## Breach of Contract

80. Lincare realleges and incorporates paragraphs 1 through 50.

81. The Employment Agreement is a valid, binding contract between Lincare and Markovic.

82. Markovic breached the Employment Agreement by failing to comply with Lincare's policies and procedures, and by failing to faithfully, competently, and professional perform his duties and responsibilities for the company.

83. As a direct and proximate result of Markovic's breach of the Employment Agreement, Lincare has suffered damages.

WHEREFORE, Plaintiff, Lincare Inc., requests a judgment against Markovic for damages, interest, costs, and such further relief as the Court deems just and proper.

## Demand for Jury Trial

Lincare demands a jury trial on all claims to which it is so entitled as a matter of law.

*/s/ Kenneth G. Turkel*
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@tcb-law.com
David A. Hayes – FBN 096657
E-mail:  dhayes@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 North Tampa Street, Suite 1900
Tampa, FL  33602
Phone: (813) 834-9191
Fax: (813) 443-2193
*Attorneys for Lincare Inc.*
