# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

LINCARE, INC.,

     Plaintiff,

v.                    CASE NO. 8:22-cv-918-MSS-TGW

SRETEN MARKOVIC,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

The plaintiff, Lincare, Inc. ("the plaintiff," "Lincare"), alleges that the defendant, Sreten Markovic ("the defendant," "Markovic"), who is the company's former Regional Vice President of the West Coast Region, is competing against it and soliciting its employees in violation of restrictive covenants contained in an employment agreement ("Employment Agreement") executed by the parties. Thus, the plaintiff has filed a Motion for Preliminary Injunction (Doc. 22), alleging that the defendant's violations are causing irreparable harm to its business.

The defendant argues that the motion should be denied because the plaintiff has failed to show any evidence that the defendant has breached any restrictive covenant contained in the Employment Agreement. Additionally, the defendant asserts that the plaintiff has failed to show a substantial likelihood of

1

success on its civil theft claim and breach of contract claims that are alleged in the plaintiff's Amended Complaint (Doc. 23-1).[1] The motion was referred to me by United States District Judge Mary S. Scriven for a report and recommendation.

The plaintiff has satisfied the four prerequisites for entry of a preliminary injunction as to the defendant's breach of the restrictive covenants contained in the Employment Agreement. I therefore recommend the entry of a preliminary injunction.

## I.

The plaintiff, Lincare, is a business provider of in-home respiratory care throughout the United States (Doc. 22, p. 4; Doc. 23-1, p. 3, ¶8).[2] As part of its business, the plaintiff provides services such as respiratory therapy, sleep apnea therapy, remote patient monitoring, enteral pharmacy services, and at home sleep studies (Doc. 22, p. 4; Doc. 23-1, pp. 3–4, ¶9). Additionally, it also provides supplies such as oxygen, CPAP/BiPAP devices, infant monitoring equipment, and ventilators (id.). The plaintiff is a Delaware corporation that is headquartered in Clearwater,

---

[1] As I indicated at the hearing, the plaintiff has filed a Motion for Leave to File Amended Complaint (Doc. 21). Notably, the plaintiff's subsequent Motion for Preliminary Injunction (Doc. 22) relies upon claims made in the Amended Complaint (Doc. 23-1) that are not contained in the initial Complaint (Doc. 1). Judge Scriven has not yet ruled on the plaintiff's Motion for Leave to File Amended Complaint (Doc. 21) and, accordingly, the initial Complaint (Doc. 1) is still the operating complaint. Despite this, my report and recommendation relies upon the Amended Complaint (Doc. 23-1). Thus, as a consequence of that, if Judge Scriven denies the plaintiff's Motion for Leave to File Amended Complaint (Doc. 21), then this motion is subject to being deemed moot.

[2] Citations are in accord with the pagination on CMECF.

Florida, but maintains offices in every state, except Alaska (Doc. 22, p. 4).

The defendant, Sreten Markovic, is a resident of Roseburg, Oregon (Doc. 23-1, p. 2, ¶3). The defendant began working for Lincare in 2010 as the Center Manager for its Roseburg, Oregon, location (id., p. 6, ¶15). Over the course of his 12-year career with Lincare, he received several promotions. Thus, in 2011 he was promoted to District Manager for Northern Oregon and Southwest Washington, and the very next year, in 2012, he was promoted to Area Manager for Northern Oregon (Doc. 22, pp. 7–8). Later, in 2016, he was promoted to Divisional Manager for California and, in 2017, he was promoted to Western Region Manager for California (id., p. 8). In 2019, he was promoted to Regional Manager for California, Oregon, Idaho, and Washington (id.). In connection with his 2019 promotion, the defendant and the plaintiff executed the Employment Agreement at issue in this matter (Doc. 22, p. 10; Doc. 22-1, pp. 9–10, ¶31; Doc. 23-1, p. 7, ¶19). Finally, in 2021, he was promoted to Regional Vice President of the West Coast Region, which covered California, Oregon, Idaho, Washington, Utah and Colorado (Doc. 22, p. 8; Doc. 22-1, p. 7, ¶20).

Naturally, with each promotion the defendant received an increase in responsibility. For instance, a Center Manager, which was the role in which the defendant started, is responsible for only one of Lincare's local operating centers, whereas an Area Manager, to which the defendant was promoted in 2012, is

3

responsible for multiple Lincare centers and for managing the Center Managers (Doc. 22-1, p. 4, ¶12).[3] Notably, in his final role as Regional Vice President of the West Coast Region, the defendant was considered to be in a "top-level" position (Doc. 22-1, p. 7, ¶21; Doc. 23-1, p. 7, ¶17). There are only four Regional Vice Presidents in Lincare and they are tasked with managing Lincare's national operations throughout the contiguous United States. Moreover, in his role as a Regional Vice President, the defendant "report[ed] directly to . . . the Chief Operating Officer," and, in fact, he was "one of only ten managers within an organization of over ten-thousand employees who directly reported to the Chief Operating Officer" (Doc. 22, p. 8; Doc. 22-1, p. 7, ¶21). Importantly, the Chief Operating Officer of Lincare, Gregory McCarthy, testified that there is no position above him at Lincare; rather, the only position parallel to him would be the Chief Executive Officer.[4] Thus, that would mean that the defendant, as a Regional Vice President, was at the second rung on the corporate ladder, immediately below the

---

[3.] This information is derived from the affidavit of Lincare's Chief Operating Officer, Gregory McCarthy. "At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." Levi Strauss & Co. v. Sunrise International Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (citation omitted).

[4.] At the hearing, defense counsel seemingly contended that Mr. McCarthy's testimony would be considered impermissible hearsay. To the extent that claim was made, it is properly disregarded. As indicated, at the preliminary injunction stage, hearsay materials may be considered so long as they are appropriate. Levi Strauss & Co. v. Sunrise International Trading Inc., supra, 51 F.3d at 985. In this matter, the testimony of Mr. McCarthy was appropriate. Thus, Mr. McCarthy affirmed his own affidavit and, in relevant part, elaborated on the corporate structure of Lincare.

Chief Operating Officer and the Chief Executive Officer.

Aside from gaining greater responsibility throughout his career, the defendant gained "extensive training and knowledge" as well as "access to certain trade secrets and other proprietary business information" of the plaintiff (Doc. 22-1, p. 8, ¶24). The plaintiff avers that the defendant, in his role as Regional Vice President of the West Coast Region, had access to the "Confidential Information" of the plaintiff and its entities, which was only accessible by individuals at the highest levels of Lincare (Doc. 22, p. 9; Doc. 22-1, p. 8, ¶25; Doc. 23-1, p. 8, ¶¶27, 28). Thus, the Confidential Information was comprised of information such as company financial information, business strategies, plans related to mergers and acquisitions, potential acquisition partners and targets, and other items specific to Lincare and not known within the industry (Doc. 22, pp. 5–6; Doc. 22-1, pp. 4–5, ¶¶14, 15; Doc. 23-1, pp. 4–5, ¶¶11, 12). Further, in that role, the plaintiff avers that the defendant participated in "executive-level discussions" and was privy to information, such as strategy, tactics, and the financial status of Lincare, that would enable him to make executive decisions (Doc. 22, p. 9; Doc. 22-1, pp. 8–9, ¶¶26, 27; Doc. 23-1, p. 8, ¶¶28, 29). Importantly, the defendant does not meaningfully contest that he partook in these activities or that he received and had access to the plaintiff's Confidential Information (see Docs. 28, 28-1).

In early April 2022, the plaintiff conducted an internal investigation of

5

the defendant for purported fraudulent expense reimbursement practices (Doc. 23-1, p. 9, ¶36).[5] Ultimately, the plaintiff concluded that the defendant "ha[d] stolen over $99,000.00 from Lincare through . . . fraudulent expense reimbursement practices" (Doc. 22, p. 14; Doc. 23-1, p. 11, ¶52). Thus, on April 12, 2022, the defendant was fired for cause under the terms of the Employment Agreement.[6] Shortly thereafter, on April 19, 2022, the plaintiff filed its initial complaint asserting, among other things, that the defendant breached the parties' Employment Agreement through his fraudulent expense reimbursement practices, to which the defendant filed his answer (see Docs. 1, 15).

However, in July 2022, the plaintiff received notice that the defendant intended to go work for SuperCare Health, Inc. ("SuperCare"),[7] which the plaintiff states is a direct competitor (Doc. 22, p. 12; Doc. 23-1, p. 15, ¶¶72, 73). Thus, similar to the plaintiff, SuperCare has offices in California, Oregon, Nevada, New Mexico, Arizona, and Texas (Doc. 22, p. 12; Doc. 23-1, p. 15, ¶76). In August 2022 the defendant did, in fact, begin working for SuperCare as its Executive Vice President of Strategy & Business Development (Doc. 23-1, p. 15, ¶78). The plaintiff asserts

---

[5] Thus, for instance, the plaintiff asserts that "from January 2019 through March 2022, Markovic submitted hundreds of fraudulent expense reports and fabricated Indeed invoices to Lincare" (Doc. 23-1, p. 18, ¶102)

[6] The defendant admits that he was fired for cause, however, he denies that he conducted fraudulent expense reimbursement practices.

[7] Thus, the plaintiff asserts that SuperCare "holds itself out as 'the leading post-acute, in-home respiratory care provider in the Western U.S.'" (Doc. 23-1, p. 15, ¶74).

that, in that role, the defendant "has used and/or disclosed some of Lincare's Confidential [Information] . . . to grow [SuperCare's] business" (id., p. 16, ¶80). The plaintiff also asserts that the defendant has solicited—and intends to continue to solicit—both current and former employees of Lincare to recruit them to work for SuperCare (id., ¶¶81–82).

Significantly, the plaintiff filed its Motion for Leave to File Amended Complaint (Doc. 21) in order to include a new claim for civil theft and an additional breach of contract claim based on the defendant's new employment, use of the plaintiff's Confidential Information, and solicitation of its employees (see Docs. 21; 23-1). Concurrently, the plaintiff filed the present Motion for Preliminary Injunction (Doc. 22). In that motion, it asserts that the defendant violated several restrictive covenants pertaining to non-competition, non-solicitation, and confidentiality provisions contained in the parties' Employment Agreement (id., p. 10). Specifically, the plaintiff asserts that the defendant's employment with SuperCare violated the following restrictive covenants, in relevant part, contained in the Employment Agreement that was executed by the parties in 2019 (Doc. 1-1, pp. 3, 4, 5):

> 6. Non-Competition.
> (a) In consideration of Lincare's employment of Employee pursuant to the terms and conditions of this Agreement, and for other good and valuable consideration, Employee hereby covenants and agrees that, commencing on the date contained in the introductory clause and continuing until 1

year after the first occurrence of either (i) the cessation of payment under Section 6(d) hereof or (ii) the cessation of Employee's employment with Lincare (or any of the other Lincare Entities) for any reason whatever, the Employee shall not, directly or indirectly, engage in the business of marketing, advertising, selling, leasing, renting, distributing, or otherwise providing oxygen, oxygen equipment, aerosol inhalation therapy equipment and respiratory medications, nasal continuous positive airway pressure devices, infant monitoring equipment and services, home sleep studies and related therapy equipment, infusion therapy, enteral, pain management, pharmacy services, or any other respiratory therapy or durable medical equipment, products, supplies and services to customers in their homes or other alternative site care facilities within the Territory ("Covenant Not to Compete"). As used herein, the term "Territory" means any location within 100 miles of any Lincare location or satellite location at which Employee was based or had sales responsibility, in either case, at any time during the last 2 years of Employee's employment with Lincare (or such shorter period, if employed fewer than 2 years with Lincare).

(b) Without limiting the generality of the provisions of Section 6(a), the Covenant Not to Compete will be construed so that Employee will also be in breach hereof (i) if Employee is an employee, officer, director, shareholder, investor, trustee, agent, principal or partner of, or a consultant or advisor to or for, or a subcontractor or manager for, an individual, person or entity that is engaged in such business in the Territory, or (ii) if Employee receives, directly or indirectly, any compensation or remuneration from, or owns, directly or indirectly, any outstanding stock or shares or has a beneficial or other financial interest in the stock or assets of any such individual, person, or entity engaged in such business in the Territory. Notwithstanding anything to the contrary contained in this Section 6(b), Employee will not be in breach of the Covenant Not to Compete solely by

reason of owning an interest of less than 1% of the shares of any entity traded on a national securities exchange or in the over the counter market.

7. Confidentiality and Non-Solicitation.
(a) Employee acknowledges that . . . Employee occupies a position of trust and confidence. Accordingly . . . Lincare will disclose to Employee certain proprietary and/or confidential information . . . . The Employee acknowledges that all such information constitutes confidential and/or proprietary information of Lincare, and Employee shall (i) keep such information confidential; (ii) use such information solely for the purpose of performing Employee's obligations hereunder or activities contemplated by this Agreement; and (iii) not otherwise disclose or make use of such information during the term of this Agreement or afterwards.

Further, the plaintiff asserts that the defendant's act of soliciting current and former employees of Lincare to recruit them to work for SuperCare violated section (b) of the "Confidentiality and Non-Solicitation" provision (id., p. 5):

(b) Employee shall not engage in any of the following: (i) directly or indirectly, hiring, offering to hire, enticing away or in any other manner persuading or attempting to persuade any officer, employee or agent of Lincare (including, but not limited to, any former officer, employee or agent of Company and any of the other Lincare Entities) to discontinue his or her relationship with Lincare and any of the other Lincare Entities; and (ii) directly or indirectly, soliciting, diverting or taking away, or attempting to solicit, divert or take away any customers, patients, referral sources, contractual relationships or other business Lincare (and other Lincare Entities) had enjoyed or solicited prior to the date hereof or at any time during Employee's term of employment with Lincare.

The defendant filed a response in opposition, in which he makes two

arguments: first, that the plaintiff cannot show a substantial likelihood of success on its civil theft claim and second, that the plaintiff has not put forth any evidence to show that the defendant works within the "Territory," as defined in the Employment Agreement (Doc. 28, pp. 2, 3). Moreover, the defendant essentially denies that he violated the Employment Agreement in any capacity.

Judge Scriven set the matter for an in-person hearing and permitted the parties to file exhibit lists and witness lists (see Doc. 25). Additionally, Judge Scriven granted leave to the plaintiff to file a reply to the defendant's response, which it did (see Docs. 37, 39). The matter was referred to me for a report and recommendation (see Doc. 42). Thus, the in-person hearing occurred before me on November 1, 2022.

At the hearing, the plaintiff iterated its position that the defendant violated the restrictive covenants contained in the Employment Agreement. Although the plaintiff listed Mr. McCarthy on its witness list—and Mr. McCarthy appeared in-person at the hearing—plaintiff's counsel indicated that, if examined, Mr. McCarthy would merely affirm the information contained in his sworn affidavit. Thus, plaintiff's counsel indicated that he did not believe it was necessary to examine Mr. McCarthy. Despite this, defense counsel insisted on cross-examining Mr. McCarthy. During Mr. McCarthy's examination by both parties, he affirmed the information in his sworn affidavit regarding the defendant's employment with

SuperCare and alleged solicitation. The plaintiff submitted three exhibits to support its claims, in addition to Mr. McCarthy's testimony (see Docs. 47-2, 47-3, 47-4). At the hearing, the defendant—for the first time—asserted that the plaintiff provided no evidence to show that the defendant solicited current and former Lincare employees. Further, the defendant broadly argued that the plaintiff did not provide evidence to support any violation of the restrictive covenants contained in the Employment Agreement.

## II.

In order to obtain a preliminary injunction, the plaintiff must establish (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) that the threatened injury to the plaintiff outweighs the threatened harm the injunction may cause the defendant and (4) that granting the injunction would not disserve the public interest. American Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1410 (11th Cir. 1998).[8]

A "preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] 'the burden of persuasion' as to each of the four prerequisites." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir.

---

[8.] State law determines the validity of the restrictive covenants, and federal law provides the appropriate guidelines concerning equitable considerations. Polaris Pool Systems, Inc. v. Great American Waterfall Co., No. 8:05-cv-1679; 2006 WL 289118 n.2 (M.D. Fla. Feb. 7, 2006), citing Ferrero v. Associated Materials, Inc., 923 F.2d 1441, 1448 (11th Cir. 1991).

2000) (internal citation omitted). The goal of a preliminary injunction is to prevent irreparable harm and to "preserve the court's ability to render a meaningful decision after a trial on the merits." Canal Authority of the State of Fla. v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974).

III.

A. Substantial Likelihood of Success.

"A substantial likelihood of success on the merits requires a showing of only likely or probable, rather than certain, success" as to one claim. Schiavo ex rel. Schindler v. Schiavo, 357 F.Supp.2d 1378, 1383 (M.D. Fla. 2005) (emphasis omitted), aff'd, 403 F.3d 1223 (11th Cir. 2005). This "element is generally the most important." Id. at 1383. However, the movant may also have its motion granted upon a lesser showing of a substantial case on the merits when the balance of the equities weighs heavily in favor of granting the injunction. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1298 (11th Cir. 2005).

The plaintiff predicates its claim for injunctive relief on its breach of contract claim, in which it alleges the defendant violated the non-competition, non-solicitation, and confidentiality provisions contained in the Employment Agreement (see Doc. 22; Doc. 23-1, pp. 24–26, ¶¶133–144). The contract provides, and the parties agree, that Florida law governs the agreement[9] (see Doc. 1-1, p. 5).

---

[9.] A federal court sitting in diversity jurisdiction, such as this matter, will apply the substantive law

To establish a breach of contract claim under Florida law, the plaintiff must show the following elements: (1) a valid contract; (2) material breach of that contract; (3) causation; and (4) damages. Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009); Mettler, Inc. v. Ellen Tracy, Inc., 648 So. 2d 253, 255 (Fla. 2d Dist. App. 1994). The defendant does not contest the existence of a contract; rather, he denies that he breached the contract. However, the plaintiff has proven that the defendant did, in fact, breach the agreement.[10] Likewise, the other elements are easily met. Thus, the plaintiff is able to establish a breach of contract claim under Florida law.

As indicated, the contract at issue involves restrictive covenants. The validity and enforcement of restrictive covenants is governed by Section 542.335 of the Florida Statutes. Thus, the statute states that a "person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." Fla. Stat., § 542.335(1)(b). The statute sets out a non-exclusive list of legitimate business interests, which include "[t]rade secrets," "[v]aluable confidential business or professional information," "[s]ubstantial relationships with specific prospective or existing customers," and "[c]ustomer, patient, or client goodwill." Id.

---

of the forum state, unless federal constitutional or statutory law compels a contrary result. See Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998).
[10.] see infra, pp. 20–22.

The plaintiff asserts that "all [of its] Confidential Information constitutes protectible legitimate business interests" (Doc. 22, p. 16). As indicated, the plaintiff states that its Confidential Information is comprised of items such as company financial information, business strategies, plans related to mergers and acquisitions, potential acquisition partners and targets, and other items specific to Lincare and not known within the industry (Doc. 22, pp. 5–6; Doc. 22-1, pp. 4–6, ¶¶14, 15; Doc. 23-1, pp. 4–6, ¶¶11, 12).

It is clear that the plaintiff's Confidential Information is a protectible legitimate business interest. As the plaintiff notes, United States District Judge William F. Jung has considered a matter involving the plaintiff enforcing a nearly identical Employment Agreement against another "top-level" employee. See Lincare, Inc. v. Tinklenburg, 2020 WL 10354020 at *6 (M.D. Fla. June 26, 2020). In that matter, Judge Jung held that "internal financial, market, methodology, and research materials are entitled to trade secret protection if security measures are taken to protect such information and the information is not generally available to others." Id. Thus, various items of the Confidential Information constitute a "trade secret," which is a legitimate business interest under the statute. Importantly, the defendant does not contend that the Confidential Information does not constitute a protectible legitimate business interest (see Doc. 28). Moreover, the plaintiff persuasively argues that "[i]n addition to the Confidential Information, Lincare has

developed significant goodwill and substantial relationships with current and prospective referral sources that constitute a protected legitimate business interest" (Doc. 22, p. 17). Thus, this too falls into the category of a legitimate business interest under the statute. See Fla. Stat., § 542.335(1)(b) (providing that "[c]ustomer, patient, or client goodwill" constitutes a legitimate business interest); see Lincare, Inc. v. Tinklenburg, supra, 2020 WL 10354020 at *6 (finding that customer referral sources constitute a legitimate business interest).

"[T]o be enforceable, restrictive covenants must be reasonable with regard to time, area and line of business." Proudfoot Consulting Co. v. Gordon, 576 F.3d 1223, 1231 (11th Cir. 2009) (internal citation omitted); see also Fla. Stat., § 542.335(1)(b). Thus, the plaintiff must also "plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction." Fla. Stat., § 542.335(1)(c). If such a showing is made, the burden shifts to the defendant to "show that the 'contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest[s].'" Proudfoot Consulting Co. v. Gordon, supra, 576 F.3d at 1231 (internal citation omitted). If the defendant meets his burden then "the court is required to 'modify the restraint and grant only the relief reasonable necessary to protect [the business] interest.'" Id. (quoting Fla. Stat., § 542.335(1)(c)). See White v. Mederi Caretenders Visiting Servs of Se. Fla., 226

So.3d 774, 785 (Fla. 2017) (quoting Fla. Stat., § 542.335(1)(c)) (the court has wide discretion to modify, or "blue-pencil," such restraints). The plaintiff persuasively argues that the restrictive covenants are reasonable with regard to time, area, and line of business.

The plaintiff asserts that the one-year duration of the non-competition covenant is reasonable and provides ample case law to support this conclusion (Doc. 22, p. 19).[11] Notably, Judge Jung previously found the plaintiff's 18-month non-competition covenant to be reasonable. Lincare, Inc. v. Tinklenburg, supra, 2020 WL 10354020 at *4 (finding "[t]he restrictions in the noncompete are narrowly tailored to be 'reasonable in time'").

With respect to the non-solicitation covenant, the plaintiff notes that there is not a time duration provided (Doc. 22. p. 19). However, it reasonably proposes that the court modify the provision to limit it to a one-year duration. As correctly pointed out by the plaintiff, the court has the ability to modify, or "blue-pencil," a provision that is "'overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest[.]'" White v. Mederi Caretenders Visiting Servs of Se. Fla., supra, 226 So.3d at 785 (internal citation omitted). Thus,

---

[11.] Thus, the plaintiff cites the following cases in support of its contention: Lincare v. Tinklenberg, 2020 WL 10354020 at *4 (finding an 18-month non-competition restriction to be "eminently reasonable and enforceable"); All Star Recruiting Locums, LLC v. Ivy Staffing Sols., LLC, 2022 WL 2340997 at *14 (S.D. Fla. Apr. 8, 2022) ("The non-competition provision is reasonable as to time as it is limited to one year following the termination of employment."); Thomas v. Osier Medical, Inc., 963 So. 2d 896 (Fla. 2d Dist. App. 2007) (enforcing two-year restriction).

the non-solicitation covenant should be construed to be limited to one year.

Further, the plaintiff correctly asserts that the 100-mile area limit of the non-competition covenant is reasonable (Doc. 22, pp. 19–20) (citing All Star Recruiting Locums, LLC v. Ivy Staffing Sols., LLC, 21-CV-62221, 2022 WL 2340997 at *14 (S.D. Fla. Apr. 8, 2022) (stating "[t]he non-competition provision is also reasonable in area as it only prevents employees from joining an entity within one hundred miles of any of Plaintiff's office locations and one hundred miles of any city or territory where Plaintiff conducts business")).[12]

With respect to lines of business, the plaintiff asserts that the non-competition covenant is reasonable "because it is limited to Lincare's business" (Doc. 22, p. 20). The defendant does not present any argument on this point. As indicated, Judge Jung previously issued an order in a matter involving the same plaintiff and virtually the same non-competition covenant. See Lincare, Inc. v. Tinklenburg, supra, 2020 WL 10354020.

Notably, in the matter before Judge Jung, he reduced the non-competition covenant as to the line of business. Significantly, unlike in this matter, Judge Jung had more facts regarding the specificity of that defendant's line of work

---

[12.] Moreover, the court in All Star found that the 100-mile area limit was "reasonable because Plaintiff has relationships with customers in all states." All Star Recruiting Locums, LLC v. Ivy Staffing Sols., LLC, 21-CV-62221, 2022 WL 2340997 at *14 (S.D. Fla. Apr. 8, 2022) (citing Victaulic Co. v Tieman, 499 F.3d 227, 238 (3d Cir. 2007) (providing that a broad geographic area limitation was reasonable as the defendant had business relationships across North America).

within Lincare. Thus, based on the information presented to him, Judge Jung was able to modify the language accordingly to include only the two lines of business in which the defendant primarily worked.

Here, the defendant presents no such information regarding any specific lines of business he may have worked while at Lincare. Moreover, the plaintiff provides facts that indicate the defendant, in this matter, took part in a greater line of businesses than the defendant in Judge Jung's matter. Thus, the plaintiff specifically asserts that, in his final role, the defendant "was responsible for his territory's entire operations, including its revenue, expenses, profitability, sales, and growth" (Doc. 22, p. 8) (emphasis added). Further, as indicated, the plaintiff asserts that in that role he had access to its Confidential Information as well as regular participation in "executive-level discussions, presentations, and meetings where company strategy, tactics, performance metrics, detailed financials, goals, [and] budgets" of Lincare were discussed (Doc. 22, p. 9; Doc. 22-1, p. 8, ¶26). Thus, it is appropriate to retain all of the lines of businesses in the non-competition provision, as it appears the defendant took part in most, if not all, of them in his managerial role with the plaintiff. The defendant presents no argument that would justify excluding lines of business from the non-competition provision.

As indicated, the defendant has not contended that any of the covenants are unreasonable "with regard to time, area and line of business." Proudfoot

Consulting Co. v. Gordon, supra, 576 F.3d at 1231; see also Fla. Stat., §

542.335(1)(b). At best, at oral argument the defendant made—for the first time—a

cryptic argument that the non-competition covenant, contained in section 6(b) of the

Employment Agreement, violates Florida public policy (see Doc. 46). Thus, the

pertinent section states the following (Doc. 1-1, pp. 3–4):

> (b) Without limiting the generality of the provisions of Section 6(a), the Covenant Not to Compete will be construed so that Employee will also be in breach hereof (i) if Employee is an employee, officer, director, shareholder, investor, trustee, agent, principal or partner of, or a consultant or advisor to or for, or a subcontractor or manager for, an individual, person or entity that is engaged in such business in the Territory, or (ii) if Employee receives, directly or indirectly, any compensation or remuneration from, or owns, directly or indirectly, any outstanding stock or shares or has a beneficial or other financial interest in the stock or assets of any such individual, person, or entity engaged in such business in the Territory. Notwithstanding anything to the contrary contained in this Section 6(b), Employee will not be in breach of the Covenant Not to Compete solely by reason of owning an interest of less than 1% of the shares of any entity traded on a national securities exchange or in the over the counter market.

Specifically, the defendant asserted that section 6(b) of the

Employment Agreement makes it so that if he works for any direct competitor he is

in breach of the agreement and, thus, the sole purpose of this clause is to prevent

competition, which violates Florida public policy (see Doc. 46). However, the cases

the defendant cited in support of his contention are inapposite. For instance, the

defendant cited <u>Colucci v. Kar Kare Automotive Group, Inc.</u>, 918 So. 2d 431, 440 (Fla. 4th Dist. App. 2006),[13] however, in that matter the appellate court reversed the trial court's granting of a preliminary injunction due to a failure to adequately assess the element of irreparable harm, which is not relevant to the element in which the defendant raised this argument. Thus, the defendant's argument is appropriately discounted. Accordingly, the defendant clearly has not met his burden to "show that the 'contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest[s].'" <u>Proudfoot Consulting Co.</u> v. <u>Gordon</u>, <u>supra</u>, 576 at 1231.

Lastly, in order to demonstrate a likelihood of success on the merits, the plaintiff must also show that the defendant breached the restrictive covenants. See <u>Strategic Staffing Solutions, Inc.</u> v. <u>O'Donohue</u>, 8:05-CV-2071-T-17TGW, 2006 WL 8433056 at *5 (M.D. Fla. Jan. 6, 2006). As indicated, the thrust of the defendant's argument contained in his response is that the plaintiff has failed to present evidence that the defendant breached the non-competition and non-solicitation provisions (<u>see</u> Doc. 28, pp. 3–5). Specifically, the defendant asserts that the plaintiff "has failed to put forth any evidence that Defendant works at a Supercare location[] within 100 miles of [the 'Territory']" and, further, that the allegation that

---

[13.] Importantly, the citations provided by the defendant were given at oral argument only, not in his response or any other filings. Consequently, the plaintiff was not given adequate time to respond to the defendant's argument, which makes the argument all the more imprudent.

the defendant has solicited former and current employees is based on "rumor" (id., pp. 4, 5). This argument is not meritorious.

The plaintiff has presented sufficient evidence regarding defendant's violation of the non-competition covenant. Thus, Mr. McCarthy testified that the defendant attended a work event in San Diego, California, that was located within 100 miles of a Lincare office. This testimony is supported by a photograph of the defendant at this event—which Mr. McCarthy identified at the hearing to be the defendant—posted on LinkedIn by a SuperCare employee (see Doc. 47-3). Additionally, as Mr. McCarthy testified, the defendant while working for Lincare worked remotely from his home in Roseburg, Oregon. Thus, he was able to act as Regional Vice President of the West Coast Region, which covered California, Oregon, Idaho, Washington, Utah and Colorado, from his home in Roseburg, Oregon.

Moreover, the plaintiff meritoriously asserts that, irrespective of the 100-mile territory provision, the defendant has nonetheless breached section 6(b) of the non-competition agreement, which states that an "[e]mployee will also be in breach hereof (i) if Employee is an employee . . . or a consultant or advisor to or for, or a subcontractor or manager for, or a subcontractor or manager for, an . . . entity that is engaged in such business in the Territory" (Doc. 1-1, p. 3). As noted, the defendant clearly breached this provision as he is in a managerial position at

SuperCare, which engages in the same business as Lincare in the Territory. Finally, the plaintiff has also provided ample evidence that the defendant has violated the non-solicitation provision through sworn affidavits and evidence submitted at the hearing. The defendant's assertion that his evidence constitutes "hearsay" or "triple hearsay" is without merit. Levi Strauss & Co. v. Sunrise International Trading Inc., supra, 51 F.3d at 985.

Thus, for the reasons discussed, the likelihood of success by the plaintiff is high and, accordingly, the first element is met.

B. Irreparable Harm.

Irreparable harm is the "'sine qua non of injunction relief.'" Siegel v. Lepore, supra, 234 F.3d at 1176. To satisfy this requirement a movant must show a significant threat of irreparable harm, and not merely remote or speculative injuries. Id. "An injury is 'irreparable' only if it cannot be undone through monetary remedies." Arthur J. Gallagher Service Co. v. Egan, 514 Fed. Appx 839, 843 (11th Cir. 2013) (citation omitted). Importantly, under Florida law, the violation of a restrictive covenant creates a rebuttable presumption of irreparable injury. Fla. Stat., § 542.335(1)(j); Lincare, Inc. v. Tinklenburg, supra, 2020 WL 10354020 at *5 (noting that "[o]nce a substantial likelihood of success on the merits is established, there is a rebuttable presumption of irreparable harm.").

As the plaintiff correctly asserts, the defendant's violation of the

restrictive covenants by itself is enough to establish irreparable harm (Doc. 22, p. 23). Moreover, the defendant does not even attempt to rebut that presumption in his response. The only argument presented by the defendant on this point occurred during the hearing, when defense counsel asked Mr. McCarthy on examination if he could "tell [the] Court that a single dollar [was] lost to SuperCare due to the defendant's employment with SuperCare" (see Doc. 46). However, as correctly noted by the plaintiff, irreparable harm exists where it is difficult to prove monetary damages and, thus, it is not necessary for the plaintiff to show monetary loss in order to show a significant threat of irreparable harm. See Ferrero v. Associated Materials Inc., supra, 923 F.2d at1449.

In addition to the presumption in the plaintiff's favor, it has shown the requisite threat of irreparable harm. Thus, the plaintiff has provided evidence that the defendant had access to its Confidential Information, given his status as a top-level employee, before his departure to SuperCare, a direct competitor. This information is comprised of business strategies, potential acquisition partners and targets, and other items specific to the plaintiff and not known within the industry (Doc. 22, pp. 5–6; Doc. 22-1, pp. 4–5, ¶¶14, 15; Doc. 23-1, pp. 4–5, ¶¶11, 12). Thus, the plaintiff clearly is facing irreparable harm given that the defendant had access to such information and now works as the Executive Vice President of Strategy & Business Development for a direct competitor who operates in the same geographic

area as the plaintiff (Doc. 22, p. 13) (emphasis added); Lincare, Inc. v. Tinklenburg, supra, 2020 WL 10354020 at *5. The plaintiff is, moreover, at risk of harm for which there is no adequate legal remedy, such as loss of goodwill, clientele, and other valuable business relationships. Ferrero v. Associated Materials Inc., supra, 923 F.2d at 1449. In fact, the plaintiff states that before the defendant's departure, he was in touch with a third-party administrator who now has "postponed implementation of its business with Lincare after [the defendant] started working at SuperCare" (Doc. 22, p. 10; Doc. 22-1, p. 9, ¶¶28, 30). Thus, there is clearly a substantial risk of irreparable harm to the plaintiff.

C. Balancing of Harms.

For this element, the movant must "'prove that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant.'" All Star Recruiting Locums, LLC v. Ivy Staffing Sols., LLC, supra, 2022 WL 2340997 at *18 (internal citation omitted). Importantly, under the Florida statute, a restrictive covenant is to be enforced only to the extent that enforcement is reasonably necessary to protect legitimate business interests. See Fla. Stat., § 542.335(1)(c).

The plaintiff avers that the threat of harm against it is significant given that, as discussed, the defendant now works at the top-level of a direct competitor and was recently privy to the plaintiff's Confidential Information (Doc. 22, pp. 23–24). Further, the plaintiff persuasively argues that "[c]onversely, the entry of an

24

injunction would only require [the defendant] to abide by his contractual obligations" (id., p. 24). The defendant asserts no argument as to this element.

The balance of harms weighs in favor of granting the injunction. As discussed, the plaintiff is likely to suffer irreparable harm for which there is no adequate remedy at law, see supra, pp. 25–27. Moreover, the defendant is merely being forced to comply with the terms of the Employment Agreement that he agreed to. See Lincare, Inc. v. Tinklenburg, supra, 2020 WL 10354020 at *6.

### D. Public Interest.

This factor asks if "granting [a preliminary] injunction will disserve the public interest." E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, Inc., 756 F.2d 1525, 1534 n.13 (11th Cir. 1985). Florida courts have recognized that enforcing contractual rights, including restrictive covenants, serves the public interest. Hillb Rogal & Hobbs of Fla., Inc. v. Grimmel, 48 So. 3d 957, 959–62 (Fla. 4th DCA 2010); New Horizons Computer Learning Centers, Inc. v. Silicon Valley Training Partners, Inc., 2:02CV459FTM29SPC, 2003 WL 23654790 at *8 (M.D. Fla. Nov. 12, 2003) (noting that "[u]nder Florida law, the public has an interest in the enforcement of restrictive covenants") (internal citation omitted).

As I indicated at the hearing, this matter involves a dispute between two private parties. Thus, the public interest element is not particularly high, relative to the other elements. Regardless, the plaintiff correctly asserts that under Florida law,

the public interest is served when restrictive covenants are enforced (Doc. 22, p. 24). The defendant makes no argument as to this element. Accordingly, this element is met.

### E. Bond.

Federal Rule of Civil Procedure 65(c) conditions the issuance of a preliminary injunction on "the movant giv[ing] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined . . . ." There must be some record basis for the amount of bond posted.

The plaintiff asserts that a nominal bond of $5,000 is reasonable as it "is simply seeking to protect its confidential business information and enforce its contractually provided-for rights" (Doc. 22, p. 25). The defendant does not propose a different amount in his response. Rather, he contends that the proposed amount by the plaintiff is "wholly inadequate" and further adds that, at SuperCare, the defendant earns $13,000.00 monthly before bonuses (Doc. 28, p. 5). At the hearing, defense counsel clarified the defendant's position, and specifically requested a bond amounting to two years of salary, which would be $312,00.00.[14] At the hearing, plaintiff's counsel said that a $156,000.00 bond, representative of one year's salary,

---

[14.] The defendant asserts that, with SuperCare, he is paid $13,000.00 monthly. Thus, $13,000.00 multiplied by 12 equals $156,000.00. That amount multiplied by two is $312,000.00.

would be reasonable. In light of that position, I find that a $156,000.00 bond, representative of one year of the defendant's salary at SuperCare, is reasonable. Lincare, Inc. v. Tinklenburg, supra, 2020 WL 10354020 at *7. Thus, I recommend that a bond in that amount be required.

IV.

For the foregoing reasons, I recommend that the Motion for Preliminary Injunction (Doc. 22) be granted.

Respectfully submitted,

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE


DATED: November 17, 2022.

NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. 636(b)(1)(C). Under 28 U.S.C. 636(b)(1), a party's failure to object to this report's proposed findings and recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions.