UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINCARE, INC.,

      Plaintiff,

v.                                                                    Case No: 8:22-cv-918-MSS-TGW

SRETEN MARKOVIC,

      Defendant.

_____

**ORDER**

**THIS CAUSE** comes before the Court for consideration of Plaintiff's Motion for Summary Judgment and Permanent Injunction. (Dkt 72) Defendant has failed to respond to either motion. Pursuant to Federal Rule of Civil Procedure 56, this Court enters the following order **GRANTING** summary judgment against Defendant, Sreten Markovic a/k/a Sam Markovic ("Markovic") and converting the Court's preliminary injunction into a permanent injunction. In support of this Order, the Court accepts the following as the undisputed facts:

I.     STATEMENT OF UNDISPUTED FACTS

     **A. Lincare's business**

Plaintiff Lincare, Inc. ("Lincare") is a leading provider of in-home respiratory care. (Dkt 22-1 at ¶ 6) Lincare is headquartered in Clearwater, Florida, but the company maintains offices and centers throughout the contiguous United States. (Id.

at ¶ 9) Lincare's national operations are managed by four Regional Vice Presidents who report directly to the Chief Operating Officer. (Id. at ¶ 10) Each Regional Vice President is responsible for a territory that includes multiple regions. (Id. at ¶ 11) All managers at all levels are responsible for sales and operations within their geographic areas of responsibility. (Id. at ¶ 12)

The in-home respiratory care industry is highly competitive. (Id. at ¶ 8) Notwithstanding this competition, Lincare has been successful, providing services and/or equipment to over two million patients each year. (Id. at ¶ 13) Lincare has developed its patient base, in part, by cultivating a vast network of referral sources, including physicians and other healthcare providers, who treat patients needing Lincare's products and services. (Id.)

Over the years, Lincare has expended substantial time, money, resources, and effort to develop certain confidential business information and trade secrets that are critical to its success in this industry. (Id. at ¶ 14) (the information identified in paragraph 14 of the McCarthy Declaration is collectively referred to as the "Confidential Information") The Confidential Information is specific to Lincare and its related entities and is not known within the industry. (Id. at ¶ 15) The organization has implemented a number of precautions to protect the secrecy of the Confidential Information, including mandating employee logins, limiting employee access to information, password-protecting information, maintaining company-wide confidentiality policies, and requiring certain employees to sign agreements that include confidentiality provisions and other restrictive covenants. (Id.)

As a result of Lincare's substantial investment of time, money, resources, and effort, has developed significant goodwill and substantial relationships with current and prospective referral sources, insurance payors and third-party administrators, vendors, and patients, each of which is critical to the continued success of the organization. (Id. at ¶ 16)

## B.  Markovic's employment with Lincare

In 2010, Lincare hired Markovic as a Center Manager for Lincare's Roseburg, Oregon center. (Id. at ¶ 17) Prior to joining Lincare, Markovic had no experience in any aspect of the healthcare industry. (Id. at ¶ 18) Over many years, Markovic was trained and promoted through a series of increasingly responsible management positions with Lincare. (Id. at ¶ 19) Markovic's most recent promotion occurred in 2021 when he was promoted to Regional Vice President of the West Coast Region of Lincare's United States operations. (Id. at ¶ 20) Regional Vice President is a top-level position within Lincare. (Id. at ¶ 21)

In his role as Regional Vice President, Markovic was responsible for a territory that generated over $200 million in revenue in 2021 that included over 850 employees and covered the states of California, Oregon, Washington, Colorado, Utah, and Idaho. (Id. at ¶ 22) As a Regional Vice President, Markovic was responsible for his territory's entire operations, including its revenue, expenses, profitability, sales, and growth. (Id. at ¶ 23) In doing so, he was responsible for supervising 20 management-level employees that reported directly to him. (Id.) Markovic also developed sales forecasts, expense budgets, capital budgets, personnel need projections, and general

3

business plans. (Id.) He was responsible for asset management and inventory, and he was delegated authority from time to time to negotiate certain contracts with vendors and suppliers on behalf of the company. (Id.) In addition, Markovic routinely met with decision-makers of referral sources, insurance payors and third-party administrators, suppliers, and vendors to facilitate and foster those relationships. (Id.) Markovic received and had access to the Confidential Information as a necessary function of his job duties. (Id. at ¶ 25)

In addition to having access to this information, Markovic regularly attended and participated in executive-level discussions, presentations, and meetings where company strategy, tactics, performance metrics, detailed financials, goals, budgets, and other Confidential Information—information shared only with individuals at the highest levels of the organization—were discussed. (Id. at ¶ 26) Markovic was also privy to the company's process, analysis, financial considerations, and other business considerations it utilizes when it enters into, bids on, or negotiates a contract, whether the contract relates to a payor relationship, vendor arrangement, or proposed acquisition of a business. (Id. at ¶ 27)

### C. Markovic's Employment Agreement

In connection with his promotion to Regional Manager for Lincare's United States West Coast Operation, Markovic executed the Employment Agreement with Lincare. The Employment Agreement is governed by Florida law and includes certain restrictive covenants including non-competition, non-solicitation, and confidentiality provisions. (Dkt. 52-1) Section 6 of the Employment Agreement sets forth the non-

competition covenant, which provides that, for a period of 1-year following Markovic's termination of employment, Markovic shall not engage in competitive business within 100 miles of any Lincare location where he was based or had sales responsibility. (Id.) The non-solicitation provision is set forth in section 7(b) of the Employment Agreement and provides that Markovic shall not solicit or hire Lincare employees, or solicit Lincare customers, patients, or referral sources. (Id.) The confidentiality provision is set forth in Section 7(a) of the Employment Agreement and provides that certain proprietary and/or confidential information would be disclosed to Markovic during the course of his employment and that Markovic was obligated to keep such information confidential and not use such information. (Id.)

### D. Markovic engages in fraudulent expense reporting practices while at Lincare.

In early April 2022, Lincare engaged in a review of the company's expenses and identified irregularities with Markovic's expenses and reimbursements. Lincare's reimbursement policy permitted employees like Markovic to use a personal credit card for business expenses. (Dkts. 52 & 53) To receive reimbursement for a business expense Markovic incurred on a personal credit card, he would be required to submit an expense report through Lincare's online system, "Concur." (Dkts. 52 & 53) Markovic was also required to submit a copy of an invoice, receipt, or other documents reflecting the expense incurred. (Dkts. 52 & 53) Lincare determined that Markovic was engaged in a fraudulent expense report scheme through which Markovic caused Lincare to pay him "reimbursements" for expenses that he did not incur. To perpetuate

this scheme, Markovic created fabricated invoices that he submitted to Lincare for reimbursement. See Lincare's First Request for Admissions to Sam Markovic. (Dkt. 72-2) Markovic also modified the amounts due on certain invoices that he then, in turn, submitted to Lincare for reimbursement. (Id.) In total, Markovic submitted at least 149 fraudulent expenses supported by fabricated invoices for which he received payment from Lincare. (Dkts. 72-2 & 52-2)

In addition to submitting requests and receiving reimbursement for falsified invoices, Markovic also submitted requests and received payment for expenses that he did not incur or for which he already received payment. (Dkt. 72-2 at ¶¶ 10-14)

Markovic also devised a scheme  to steal  Lincare's  equipment.  Specifically, Markovic  directed  Lincare employees to ship Lincare equipment to Markovic's personal residence, which Markovic then appropriated for his own benefit. (Id. at ¶¶ 15, 16)

### E. Lincare terminates Markovic and Markovic begins working for a competitor in violation of the Employment Agreement.

Immediately after Lincare discovered Markovic's fraudulent expense reporting scheme, Lincare fired Markovic. (Dkt. 22-1 at ¶ 33) In August 2022, Markovic was hired by a director competitor to Lincare as the Executive Vice President of Strategy & Business Development. (Dkt. 22-1 at ¶ 38; Dkt. 52 & 53) The competitor company provides many of the same services as Lincare, including ventilation, oxygen, CPAP/BiPAP, pharmacy services, sleep apnea therapy, nebulizers and nebulizer medications, remote patient monitoring, and home sleep testing. (Dkt. 22-1 at ¶ 40 &

43) The company, like Lincare, has offices throughout California, and in Oregon, Nevada, and New Mexico, and it also provides services in Arizona and Texas. (Dkt. 22-1 at ¶¶ 41, 43; Dkt. 52 & 53) In his new role, Markovic disclosed and used Lincare's Confidential Information at the company. (Dkt. 72-2 at ¶¶ 17, 18) Markovic also solicited current and former Lincare employees and created a list of Lincare employees that he was targeting to hire. (Id. at ¶¶ 1, 2, 19)

## II.    LEGAL STANDARD

Summary judgment is appropriate where the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or highlighting to the Court that no evidence supports the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted). When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories,

or admissions on file) that demonstrate there is a genuine issue for trial. <u>Porter v. Ray</u>, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. <u>Evers v. Gen. Motors Corp.</u>, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value."). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." FED. R. CIV. P. 56(e).

### III.   DISCUSSION

#### A. Lincare is entitled to summary judgment on its claims for conversion and civil theft.

Conversion is an "act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260, 1270 (11th Cir. 2009) (quoting <u>Thomas v. Hertz Corp.</u>, 890 So. 2d 448, 449 (Fla. 3d DCA 2004)). The tort "may occur where a person wrongfully refuses to relinquish property to which another has the right of possession," and it "may be established despite evidence that the defendant took or retained property based upon the mistaken belief that he had a right to possession, since malice is not an essential element of the action." <u>United Techs.</u>, 556 F.3d at 1270 (quoting <u>Seymour v. Adams</u>, 638 So. 2d 1044, 1047 (Fla. 5th DCA 1994)). "'To establish a claim for civil theft, a party must prove that a conversion has taken place and that the accused party acted with criminal

8

intent.'" <u>Robinson v. Frese Hansen Anderson Anderson Heuston and Whitehead,</u>

<u>P.A.</u>, No. 6:12-cv-1064, 2015 WL 12843854 (M.D. Fla. Mar. 31, 2015) (quoting

<u>Gasparini v. Pordomingo</u>, 972 So. 2d 1053, 1056 (Fla. 3d DCA 2008)).

Markovic converted Lincare's property when he shipped Lincare's equipment to his home and appropriated it for his own use. (Dkts. 72-2, 52 & 53) He also converted Lincare's money when he sought and received from Lincare reimbursement for invoices he fabricated, expenses he never incurred, and expenses for which he was already reimbursed. (Dkt. 72-2 at ¶¶ 5-16, 20, 21) As such, summary judgment on Lincare's conversion claim (Count I) is proper.

Summary judgment is also proper on Lincare's claim for civil theft. The prerequisite to suit has been satisfied. Pursuant to section 772.11, Florida Statutes, Lincare sent a civil theft demand letter before asserting its claim. (Dkts. 52 & 53) Further, the unrebutted record is sufficient to establish Markovic's fraudulent intent. The record establishes that Markovic fabricated invoices and modified invoices that he later submitted to Lincare for reimbursement. (Dkt. 72-2 at ¶¶ 5-9) Over two years, Markovic submitted 146 expense reports supported by falsified invoices. (<u>Id</u>. at ¶¶ 20, 21)  In other instances, Markovic submitted duplicate requests for reimbursements, requests for expenses he never incurred and requests for payment for mileage he did not drive. (<u>Id</u>. at ¶¶ 10-14) Further, Markovic shipped Lincare's equipment to his personal residence, rather than to a Lincare office, that he then appropriated for his own use. (<u>Id</u>. at ¶¶ 15, 16) Based on this record, Lincare has established as a matter of law that Markovic acted with criminal intent. Accordingly, summary judgment is also

appropriate on Lincare's claim for civil theft (Count II).

### B. Lincare is entitled to summary judgment on its claim for fraud and its claim for negligent misrepresentation.

Causes of action for fraudulent misrepresentation and negligent misrepresentation have nearly identical elements. Bicz v. Colliers International Detroit, LLC, No. 8:17-cv-01840, 2019 WL 4714373 at *5 (M.D. Fla. Sept. 10, 2019). "To properly plead such claims, a plaintiff must allege: (1) the defendant made a false statement concerning a material fact; (2) the defendant made the false statement with knowledge of its falsity (or, in the case of negligence, made the statement without knowledge of its truth or falsity or with constructive knowledge that it was false); (3) the defendant intended that the representation induce another to act on it; and (4) an injury resulted to the plaintiff who acted in reliance upon the representation." Id.

Here, Markovic made 149 false statements of material fact when he submitted 149 fraudulent expense reports to Lincare that were supported by falsified invoices. (Dkt. 72-2 at ¶¶ 5-9, 20, 21) He also made false statements of material fact when he represented to Lincare that he incurred certain expenses that he did not actually incur or for which he already received payment. (Id. at ¶¶ 10-14) He knew these statements were false when he made them. In the case of the expense reports based on falsified Indeed invoices, Markovic actually created these fabricated invoices and/or modified the amounts on the invoices. (Id. at ¶¶ 5, 8) For the non-invoice expenses, and in the absence of any proffer of evidence to the contrary, the Court finds that Plaintiff has established that Markovic knew—and certainly should have known—that he did not

incur the expenses or was already reimbursed for certain expenses when he sought reimbursement from Lincare.

Markovic intended for Lincare to rely upon his fraudulent expense reports, and Lincare did, in fact, rely upon such reports when Markovic caused Lincare to pay amounts it believed were for legitimate business expenses. (Id. at ¶¶ 7, 9, 11, 13, 14) Accordingly, the unrefuted evidence establishes that Lincare is entitled to summary judgment on its claim for fraud (Count III). At minimum, Lincare is entitled to summary judgment on its claim for negligent misrepresentation (Count IV).

### C. Lincare is entitled to summary judgment on its claims for breach of fiduciary duty, breach of the duty of loyalty, and breach of contract.

"The elements of a breach of fiduciary duty action are (1) the existence of a fiduciary duty and (2) the breach of that duty that was the proximate cause of the plaintiff's damages." Collins v. Countrywide Home Loans, Inc., 680 F.Supp.2d 1287 (M.D. Fla. 2010). "For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009).

Lincare has established that Markovic owed it a fiduciary duty and a duty of loyalty during his employment with the company. (Dkts. 52 & 53) Additionally, Lincare has established, and the Court has previously found, that a contract exists and that Section 4(b) of that contract required Markovic to comply with Lincare's policies and procedures and to comply with all laws, rules, and regulations applicable

to Lincare's business. (Dkt. 22-1 at ¶ 31; Dkt. 28 Dkt. 50; & Dkt. 52-1) Markovic breached his fiduciary duties and Section 4(b) of the Employment Agreement when he embezzled money from Lincare through his fraudulent expense reporting scheme. (Dkt. 72-2 at ¶¶ 5-14, 20, 21) This scheme caused Lincare damages when it paid Markovic for the alleged business expenses he never actually incurred. (Id. at ¶¶ 7, 9, 11, 13, 14) Further, Markovic breached his duties owed to Lincare and caused Lincare damages when he misappropriated Lincare's equipment for his own use. (Id. at ¶¶ 15, 16) As such, Lincare is entitled to summary judgment on its claims for breach of fiduciary duty (Count V), breach of the duty of loyalty (Count VI), and breach of contract for damages (Count VII).

However, Lincare is required to elect a remedy because the contract claims, specifically Markovic's improper expense reimbursement practices, are premised on the same actions and inactions as the fraud and misrepresentation claims and will operate to provide Lincare with a double recovery for the same injury. See F.T.C. v. Leshin, 719 F.3d 1227, 1233 (11th Cir. 2013) ("The doctrine of election of remedies. . . limits a party with the choice of two remedies that are 'inconsistent with each other' from obtaining both remedies or from obtaining first the one remedy and then, at a later date, an alternative one. . . Remedies are inconsistent if they provide 'double recovery for the same injury,' . . . or rely on sets of facts that are inconsistent with one another[.]" (quotations and internal citations omitted)). To be clear, Lincare's damages for the fraud as alleged in the Amended Complaint consist of damages stemming from the unpaid invoices, which overlaps with the breach of contract claim

and is otherwise the same injury claimed under the negligent representation claim and breach of fiduciary duty and duty of loyalty claims. (Dkt. 52) Therefore, Lincare is directed to notify the Court of its election of remedies for either the contract or fraud/misrepresentation claims within **fourteen (14)** days of the date of this Order.

### D. The Court further converts its previously entered Preliminary Injunction into a Permanent Injunction.

"[T]o obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law of this right; and (3) irreparable harm will result if the court does not order injunctive relief." Alabama v. U.S. Army Corps of Engineers, 424 F.3d 1117, 1128 (11th Cir. 2005). This Court previously entered a preliminary injunction based on the McCarthy Declaration and testimony provided by Mr. McCarthy at a hearing. (Dkts. 50 & 58) Since that time, Markovic has abandoned the litigation and he has not elicited *any* evidence that contradicts or undermines the evidence upon which the Court relied in entering its preliminary injunction order. Accordingly, the Court hereby converts the preliminary injunction into a permanent injunction. See Citibank (S. Dakota) N.A. v. Nat'l Arbitration Council, Inc., No. 3:04-cv-01076, 2006 WL 2691528, at *4 (M.D. Fla. Sept. 19, 2006) ("Courts recognize that if there is no triable issue of fact, a court may convert a preliminary injunction to a permanent injunction without an evidentiary hearing." (citations, quotations, and alterations omitted)).

## IV.   CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED**:

1.      Plaintiff's Motion for Summary Judgment, (Dkt. 72), is **GRANTED**.
**Plaintiff is directed to notify the Court of its election of remedies for either the
contract or fraud claims within fourteen (14) days of the date of this Order.**

2.      Plaintiff is further directed to file any supporting documentation for
attorney's fees incurred in this matter **within twenty-one (21) days of the date of this
Order**. Thereafter, the Court will enter a final judgment accordingly.

3.      Plaintiff's Motion for Sanctions, (Dkt. 73), is **DENIED as MOOT**.

4.      Plaintiff's Motion, (Dkt. 72), to convert the Preliminary Injunction, (Dkt.
58), into a Permanent Injunction is **GRANTED** as explained above.


**DONE** and **ORDERED** in Tampa, Florida, this 11th day of March 2024.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE


**Copies furnished to:**
Counsel of Record
Any Unrepresented Person

14